**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **ANGELA LAWRENCE** | * | **CIVIL ACTION NO.:** |
| | * | |
| | * | **SECTION: "____"** |
| **PLAINTIFF** | * | |
| | * | **JUDGE _________________________** |
| **VERSUS** | * | |
| | * | **MAGISTRATE JUDGE _____________** |
| | * | |
| **OFFICER CHRISTOPHER COLEMAN, JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, and CITY OF NEW ORLEANS** | * | |
| | * | |
| **DEFENDANTS** | * | |

*******************************************************************************

## COMPLAINT AND DEMAND FOR JURY TRIAL

**NOW INTO COURT** comes Plaintiff ANGELA LAWRENCE, by and through undersigned counsel, and for her Complaint against Defendants Christopher Coleman, John Doe 1, John Doe 2, John Doe 3, and the CITY OF NEW ORLEANS, hereby states and alleges as follows:

## INTRODUCTION

Plaintiff Angela Lawrence suffers from Williams Syndrome, a rare, neurodevelopmental genetic condition characterized by cognitive challenges, developmental delays, and clearly identifiable physical features[1]. On or about July 30, 2024, Ms. Lawrence was asleep inside her bedroom when police entered her residence without a warrant and without announcing themselves[2], under the auspices of searching for an occupant of a stolen vehicle[3]. Only after

[1] *See* https://my.clevelandclinic.org/health/diseases/15174-williams-syndrome.
[2] *See generally* Body Worn Camera of Officer Christopher Coleman at 0:00 to 0:32.
[3] *See* New Orleans Police Department Incident Report G-28414-24 and G-28718-24.

kicking and pushing the closed bedroom door, did one officer identify himself as "NOPD" while pointing a gun at Ms. Lawrence[4]. Ms. Lawrence was forcefully detained, made to walk over glass, and removed from the residence. Ms. Lawrence quickly and fully complied with every command. Even once the police officers realized that this was a case of mistaken identity and that Ms. Lawrence was not and could not have been a party to the stolen vehicle, they continued with her detention, despite her obvious physical conditions and mental delays. Ms. Lawrence suffered physical injuries as a result of this incident as well as continued emotional and mental anguish. For these injuries, Ms. Lawrence seeks money damages pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth Amendment to the United States Constitution, and under the laws of the State of Louisiana.

Ms. Lawrence now turns to this Honorable Court in pursuit of justice.

## JURISDICTION AND VENUE

1. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343 because the controversy arises under the U.S. Constitution and 42 U.S.C. § 1983. This Court has authority to award attorney's fees pursuant to 42 U.S.C. § 1988.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this complaint happened in this district.

## PARTIES

3. Plaintiff Angela Lawrence is a person of the age of majority, resident of and domiciled in the Parish of Orleans, State of Louisiana.

[4] *See* Body Worn Camera of Officer Christopher Coleman at 1:08 to 1:10.

4. Defendant Christopher Coleman is a person of majority domiciled in the State of Louisiana. At all times pertinent and relevant to this action, Coleman was employed as a police officer by the City of New Orleans, Louisiana and at all times mentioned herein acted in the course and scope of his employment and under color of law. Coleman is sued in his individual capacity.

5. Defendants John Doe 1 through 3 (collectively, "Other Officers") were, at all times pertinent and relevant to this action, employed as police officers by the City of New Orleans, Louisiana and at all times herein mentioned acted in the course and scope of their employment and under color of law. Defendant Other Officers are sued in their individual capacities.

6. Defendant City of New Orleans is a political subdivision organized, formed, and or chartered under the laws of the State of Louisiana who oversees the New Orleans Police Department. Defendant City at all times pertinent and relevant to this action employed Defendants Coleman and Other Officers. Defendant City was responsible for the hiring, training, supervision, discipline, administration, policies, customs, practices, operations, management and control of the New Orleans Police Department and its officers, including Defendants Coleman and the Other Officers.

7. Defendants are liable jointly, severally, and *in solido* for the intentional, excessive, and otherwise unconstitutional and tortious conduct set forth below.

## FACTUAL ALLEGATIONS

8. Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

9. Plaintiff was asleep at home, 2612 Mazant Street, New Orleans, Louisiana on July 30, 2024 at approximately 12 noon.

10. Plaintiff suffers from Williams Syndrome, a genetic condition that presents with physically obvious external factors as well as mental delay.

11. On or about July 30, 2024, at approximately 7:45 a.m., Defendant's police department received a report of a stolen vehicle.[5]

12. On or about July 30, 2024, at approximately 11:45 a.m., Defendant's police department discovered the reported stolen vehicle in the driveway attached to 2614 Mazant Street, New Orleans, Louisiana.

13. Plaintiff's residence is the left side of a double residence which is separate and apart from the right side.

14. Plaintiff's residence does not contain an attached driveway.

15. Defendant Coleman arrived at 2614 Mazant Street, after three of the alleged occupants were in police custody.[6]

16. Defendant Coleman, and other officers, entered plaintiff's home with guns drawn and without knocking or verbal announcement of their presence.[7]

17. Plaintiff did not give permission to Defendant Coleman, other officers, to enter her home.

18. Defendant's police officers, upon entry of the home, proceeded through the living room to the closed bedroom door.[8]

19. Defendant Coleman, and other officers discovered that the next door was locked or blocked and still did not identify their presence with guns drawn.[9]

---

[5] *See* New Orleans Police Department Incident Report G-28414-24 at p. 3.
[6] *See* New Orleans Police Department Incident Report G-28414-24 and G-28718-24 at p. 2.
[7] *See* Body Worn Camera of Officer Christopher Coleman at 0:42 to 1:08.
[8] *Id.*
[9] *Id.*

20. Defendant Coleman first pushed and then began to kick in plaintiff's bedroom door.[10]

21. Defendant Coleman and other officers only then announced their presence as NOPD once the sole occupant, plaintiff, was spotted.[11]

22. Plaintiff, half-awake and in a daze, responded to Defendant Coleman and other officers that she was by herself when asked.[12]

23. Defendant's police officers continued to kick in the plaintiff's bedroom door until it broke in half all the while calling her "lady", and "baby".[13]

24. Defendant Coleman and other officers then conducted a protective sweep of the house.[14]

25. Defendant Coleman and other officers then unnecessarily arrested the home occupant plaintiff.[15]

26. Defendant Coleman and other officers then marched plaintiff to the front porch of her home, through alleged broken glass on the porch, and to her front lawn.[16]

27. One of the John Doe defendant officers asks Defendant Coleman if the raided home is supposed to be unoccupied to which Defendant Coleman responded I don't know.[17]

28. Plaintiff, crying, asked for her mother.[18]

29. Defendant Coleman and other officers were then greeted by their supervisor, Detective TJ Murray, who was standing out front on plaintiff's lawn shaking his head stating that the plaintiff's arrest was "not related, man" and "I can tell you right now" that the entry was unrelated to the

[10] *Id.*
[11] *Id.* at 1:08 to 1:10.
[12] *Id.* at 1:30 to 1:37.
[13] *Id.* at 1:58 to 2:05.
[14] *Id.* at 2:13 to 2:40.
[15] *Id.* at 3:07 to 3:23.
[16] *Id.* at 3:23 to 3:25.
[17] *Id.* at 3:24 to 3:26
[18] *Id.* at 3:47 to 4:00.

stolen car investigation per officer worn body camera when viewing the totality of the circumstances.[19]

30. Detective TJ Murray asked of the Defendant Coleman and Other officers why plaintiff was in handcuffs four times.[20]

31. Defendant Coleman responded Detective TJ Murray that she did not listen.[21]

32. Plaintiff complied with all of Defendant Coleman and other officers commands to show her hands, get up and off of her own bed in her own home and stand.[22]

33. Plaintiff was released from custody and handcuffs with her freedom restored.[23]

34. Detective TJ Murray states to Defendant Coleman that the totality of the circumstances provided insight that the entry to plaintiff's home was unrelated to the stolen car investigation and "the ones that ran".[24]

35. Detective TJ Murray then stated to Defendant Coleman "I'm just telling you, I can tell you right now that woman ain't got nothing to do with that".[25]

36. Defendant Coleman tried to explain away his actions to Detective TJ Murray and stated that "I also didn't put her in handcuffs."[26]

37. Detective TJ Murray then stated to Defendant Coleman that the woman was obviously on the spectrum.[27]

---

[19] *Id.* at 3:25 to 4:33
[20] *Id.* at 3:33 to 3:34, 3:35 to 3:37, 3:40 to 3:42, 3:48 to 3:50.
[21] *Id.* at 3:37 to 3:39
[22] *Id.* at 1:10 to 1:15, 1:35 to 1:37, 2:06 to 2:14.
[23] *Id.* at 4:10 to 4:14
[24] *Id.* at 3:30 to 4:33.
[25] *Id.* at 4:29 to 4:33.
[26] *Id.* at 4:43 to 4:46.
[27] *Id.* at 4:48 to 4:52.

38. Defendant police report shows that their carpentry department was called to repair the kicked in, damaged door.[28]

39. Defendant's supervising police officer said the door was barricaded because they, plaintiff, keeps the dog in the front per officer worn body camera.[29]

40. Defendant Coleman and other officers let the plaintiff's dog escape to the street and left a disabled person, plaintiff to retrieve on her own.[30]

## COUNT 1: CIVIL RIGHTS VIOLATION UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983: UNAUTHORIZED ENTRY, ARREST

41. Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

42. Plaintiff alleges that the Defendant Coleman other officers, John Does 1 through 3, and the City Of New Orleans department of police have violated the Civil Rights Act, 42 U.S.C. § 1983 for its unauthorized and unlawful entry, and arrest without statutory authority under the color of law;

43. 42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

44. Defendant Coleman and other officers, jointly and severally, deprived Ms. Lawrence of clearly established rights secured to her under the United States Constitution specifically the

[28] *See* New Orleans Police Department Incident Report G-28718-24 at p. 2.
[29] *Id.* at 4:52 to 4:55.
[30] *Id.* at 4:25 to 4:27

Fourth Amendment rights to be free from unreasonable seizures and to be free from the use of excessive force against one's person.

45. Defendants' conduct was the moving force and the proximate and producing cause of the aforementioned injuries of physical pain, and mental suffering.

46. Due to the injuries suffered by Ms. Lawrence, she is entitled to compensatory, economic, and consequential damages, in amounts to be determined at trial. As a further result of Defendants' unlawful conduct, Ms. Lawrence has incurred special damages, including expenses related to her pre-existing and obvious disability aggravated by her injuries. She may continue to incur other expenses and other special damages, in amounts to be established at trial.

47. Ms. Lawrence is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

48. In depriving Ms. Lawrence of her rights under the United States Constitution, Defendant Coleman and Other Officers, and the defendant City acted under color of law in their respective capacities as New Orleans police officers, and their actions and omissions were conducted within the scope of their respective official duties or employment. This deprivation under color of law is actionable and may be redressed by 42 U.S.C. § 1983.

**COUNT 2: CIVIL RIGHTS VIOLATION UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983: FALSE IMPRISONMENT**

49. Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

50. The Defendant and its department of police have violated the Civil Rights Act, 42 U.S.C. § 1983 for plaintiff's false arrest and imprisonment under the color of law.

51. Plaintiff avers that she was unlawfully removed from her home by the defendant's officers without warrant or cause.

52. Plaintiff avers that she was placed under arrest and in handcuffs.

53. Plaintiff avers that her body was bruised in this incident during her arrest.

54. Due to the injuries suffered by Ms. Lawrence, she is entitled to compensatory, economic, and consequential damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Ms. Lawrence has incurred special damages, including expenses related to the aggravation to her disability caused by her injuries. She may continue to incur other expenses and other special damages, in amounts to be established at trial.

55. In depriving Ms. Lawrence of her rights under the United States Constitution, Defendant Coleman and Other Officers, and the defendant City acted under color of law in their respective capacities as New Orleans police officers, and their actions and omissions were conducted within the scope of their respective official duties or employment. This deprivation under color of law is actionable and may be redressed by 42 U.S.C. § 1983.

**COUNT 3: CIVIL RIGHTS VIOLATION UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983: FAILURE TO TRAIN (as to City of New Orleans)**

56. Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

57. The New Orleans Police Department is a department within the City of New Orleans, a named Defendant in this case.

58. At all times relevant to this action, Defendant City had policymaking authority and otherwise controlled the training and supervisory practices of the New Orleans Police Department.

59. Defendant City has a policy, practice and custom of failing to train and supervise police officers with respect to a clear constitutional duty implicated in a recurrent situation that police officers are certain to face—i.e., the routine handcuffing of arrestees who pose no threat or risk of

flight and who, to the knowledge of the arresting officer, suffer from a medical condition that will be aggravated by handcuffing.

60. Defendant City's policies, practices and customs of failing to train and supervise New Orleans Police Department officers were the moving force and the proximate and producing cause of Ms. Lawrence's injuries.

61. Due to the injuries suffered by Ms. Lawrence, she is entitled to compensatory, economic, and consequential damages, in amounts to be determined at trial. As a further result of Defendants' unlawful conduct, Ms. Lawrence has incurred special damages, including expenses related to the disability caused by his injuries. She may continue to incur other expenses and other special damages, in amounts to be established at trial.

62. Ms. Lawrence is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

63. In depriving Ms. Lawrence of her rights under the United States Constitution, Defendant City acted under color of law in its capacity as a municipal entity organized under the laws of Louisiana, and its actions and omissions were conducted within the scope of Defendant City's official duties. This deprivation under color of law is actionable and may be redressed by 42 U.S.C. § 1983.

64. Plaintiff alleges that the Defendant and its department of police have violated the Civil Rights Act, 42 U.S.C. § 1983 for its under the color of law unauthorized and unlawful arrest and false imprisonment of plaintiff injured her physically and mentally;

**COUNT 4: Louisiana State Law Claims for Damages and Negligence**
**(As To Defendants Coleman and Other Officers)**

65. Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

66. Plaintiff asserts violations of Louisiana state law by Defendants Coleman and Other Officers under La. Civ. Code Ann. art. 2315 (liability for acts causing damages), and La. Civ. Code Ann. art. 2316 (negligence, imprudence or want of skill).

67. The acts or omissions of these Defendants, as described herein, deprived Plaintiff of her rights under Louisiana state law and caused him the injuries and damages described in this Complaint.

**COUNT 5: Louisiana State Law Claims**
**(As to Defendant City of New Orleans)**

68. Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

69. Plaintiff asserts violations of Louisiana law by Defendant City of New Orleans under La. Civ. Code Ann. art. 2317 (acts of others); La. Civ. Code Ann. art. 2320 (acts of servants); La. Rev. Stat. Ann. §14:33, et seq. (battery), La. Rev. Stat. Ann. § 14:36, et seq. (assault), La. Civ. Code Ann. art. 2315 (liability for acts causing damages), La. Civ. Code Ann. art. 2316 (negligence, imprudence or want of skill), La. Code Crim. Proc. Ann. art. 220 (requiring the use of reasonable force in effecting a lawful arrest).

70. Accordingly, as a matter of Louisiana law, Defendant City of New Orleans is vicariously liable for all conduct of, or attributable to, Defendant Coleman and Other Officers.

**COUNT 6: Louisiana State Law Claim for Intentional Infliction of Emotional Distress**
**(As to Defendants Coleman and Other Officers)**

71. Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

72. Plaintiff asserts violations of Louisiana law relative to intentional torts by Defendant Coleman and Other Officers.

73. Defendants acted intentionally, as described herein, to deprive Plaintiff of her rights under Louisiana state law and caused her the injuries and damages described in this Complaint.

74. As a direct and proximate result of the intentional acts of Defendants Coleman and Other Officers described herein Ms. Lawrence has experienced emotional and psychological injuries—including mental anguish, humiliation, emotional distress, loss of enjoyment of life, and other non-pecuniary losses.

**JURY DEMAND**

75. Pursuant to the Federal Rules of Civil Procedure, Rule 38, the Plaintiffs demand trial by jury of all issues triable of right to a jury and raised by the pleadings in this action;

Respectfully submitted,

Robert T. Garrity, Jr., LSBA No.: 5951
Pierre W. Mouledoux, LSBA No.: 39665
The Law Office of Robert T. Garrity, Jr.
615 Hickory Avenue
Harahan, Louisiana 70123
504-738-1111
rgarrity@robertgarrityjr.com
pmouledo@gmail.com
ATTORNEYS FOR ANGELA LAWRENCE